58 CCPA

**Application of Jean-Pierre VASSEUR and Raymond Sauveniere.**

**Patent Appeal No. 8501.**

United States Court of Customs and Patent Appeals.

June 24, 1971.

Harvey Kaye, Jay M. Finkelstein, George H. Spencer, Spencer & Kaye, Washington, D. C., attorneys of record, for appellants.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. R. V. Lupo, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals sustaining the examiner's rejection of claims 1–8 and 10 of appellants'

application[1] as unpatentable over the prior art. No claims are allowed.

## THE INVENTION

The invention relates to window assemblies made up of one or more glass panes mounted in a plastic frame which is molded around the periphery of the pane or panes. Exemplary forms of the invention are illustrated in Figures 1, 3 and 5:

*Fig. 1.*

*Fig. 3.*

*Fig. 5.*

[A4168]

Figure 1 is a cross-sectional view of a glass window pane 1 held in a frame 2. The frame is said to be made of "softenable" plastic material, "for example, of a suitable polyester, polyethylene or polyvinylchloride." The assembly is fabricated "according to any well known molding technique" in which the pane 1 is held in position with respect to a suitable mold and the plastic, "suitably treated to render it moldable", is added to the mold so as to be disposed around the periphery of the pane to form a tight joint therewith and is then permitted to harden.

Figure 3 shows, in cross-sectional view, an assembly of three spaced panes 12, 13 and 14. In fabrication, peripheral portions of one or both flat surfaces of each pane are metallized "according to any well known technique". Lead strips 17 are next welded to these metallized portions with each strip extending between a pair of panes to maintain the spacing. A plastic frame 28 is then molded around the edges of the assembly in the same manner as in Figure 1 assembly.

Figure 5 is a plan view of a structure with three coplanar glass panes 23, 24 and 25. A frame 2 of plastic material is molded simultaneously around all three panes.

Claims 1, 3 and 10 are representative:

1. A window frame assembly comprising:

(a) at least one glass window pane; and

(b) a relatively rigid, self-supporting frame of plastic material molded around, and forming a seal with, the edge of said pane and overlapping at least one surface of said pane around the peripheral region thereof.

3. An arrangement as defined in claim 1 wherein said at least one glass pane comprises a plurality of panes disposed in a stacked, spaced relationship with respect to one another, said arrangement further comprising spacer means disposed between each adjacent pair of said panes for maintaining the required separation between each said pair of panes.

10. A window frame comprising
(a) a plurality of glass window panes

(b) a relatively rigid, self-supporting plastic frame moulded simultaneously around and forming a seal with,

---

1. Serial No. 511,033, filed December 2, 1965, for "Glass Products".

the edges of said panes disposed in co-planar or similar spaced position.

## THE PRIOR ART

The references cited in rejecting the claims and relied on as representative of the prior art are United States patents to Watkins,[2] Goodwillie[3] and Williams.[4]

Watkins discloses a transparent glass panel assembly having a rigid metal mounting frame secured around the periphery of the glass. The assembly is made by positioning the panel unit, which may be made up of a plurality of sheets of glass with thermoplastic sheets interposed therebetween, in a mold extending around its periphery. Molten metal, having a melting point low enough that injury to the glass is avoided, is then poured into the mold and permitted to cool. The frame can be "cast in any desired form by properly shaping the mold." While certain illustrated forms of the frame are of substantially rectangular cross-section, one form is shown and described as U-shaped. Also, the patent states that a single sheet of glass may be used and the frame poured "in a manner to embrace the edges of the sheet."

Goodwillie discloses a structure including two sheets of glass held in spaced face-to-face relation by a metal separator strip soldered to metal coatings on peripheral portions of the opposed glass surfaces. A flexible strip of synthetic plastic material is disposed around the edges of the sheets with a central rib extending into a channel at the location of the separator strip.

Williams discloses a structure for a stained glass window, adequately illustrated in Figures 1 and 3 below:

FIG. I

[A4167]

FIG. 3

[A4173]

2. No. 2,537,804, issued January 9, 1951.

3. No. 2,618,819, issued November 25, 1952.

4. No. 2,991,213, issued July 4, 1961.

Figure 1 is a plan view showing variously outlined pieces of glass 12 joined by a bead 16. Figure 3 is a cross-sectional view taken on line 3–3 of Figure 1. It shows the bead 16 to have an H-shape cross section with the opposed channels formed thereby receiving the edge portions 30 of adjacent pieces 12. The bead is composed of a "hard setting of polysulphide polymer" and is "intimately bonded with the edge portions of the pieces of glass" without need for additional adhesives.

## THE REJECTIONS

The examiner rejected claims 1–8 as unpatentable over the combination of the Watkins and Goodwillie patents under 35 U.S.C. § 103. In discussing this rejection, he commented:

[T]he alternative use of synthetic plastic or metal is so well known in the fabrication arts that an ordinary mechanic working in the art would readily appreciate that the frames of Watkins and Goodwillie could equally well be accomplished with metal or plastic as desired.

On appeal, the board first stated that it did not agree with the examiner that it would be obvious in view of the "flexible rubber or plastic edge strip" of Goodwillie to use a plastic for the rigid frame of Watkins. Nevertheless, it sustained the rejection of claims 1–8 on the basis of agreement with the examiner that it would be obvious to an ordinary mechanic working in the art to substitute plastic for the metal of Watkins to provide a rigid frame.

As to claim 10, the board agreed with the position, taken by the examiner, that that claim is fully met by Williams under 35 U.S.C. § 102.

## OPINION

The issue raised by the rejection of claims 1–8 is not, as appellants state it, whether metal and plastics are equivalents for all purposes. Rather, it is whether the well-known practice of substituting plastic material for metal in the production of various articles would make it obvious to a person of ordinary skill in the present art to make a similar substitution with respect to the frame of Watkins. We think it would.

The Watkins frame is made by adding molten metal to a mold disposed about the edge of the glass. It is readily apparent that there are plastic materials well suited for the same mode of fabrication, and additionally having a low enough melting point to be conducive to such use without injury to the glass. The Watkins frame is described as "rigid" and it is apparent that plastic materials can provide that property. The light weight of plastics, advanced by appellants as an advantage of their construction, actually provides an additional reason why a worker in the art would find it obvious to substitute them in Watkins, which itself suggests that "the weight be held to a minimum" and expresses a preference for a material such as an "alloy having a low density approaching that of aluminum."

All of the requirements of claims 1–8 other than the limitation to the plastic material appear to be either fully disclosed in Watkins or obvious. Thus, we think the aspects of the Watkins disclosure already discussed clearly teach that the frame material may be shaped to overlap the surface of the glass around the peripheral region whether one or a plurality of panes are employed in the assembly. Also, we agree with the board that the disclosure of metal spacers soldered between metalized portions of opposed glass surfaces in Goodwillie would have made it obvious to employ similar spaces between glass panes in the modified Watkins assembly. The particular metal used for the spacers (claims 5 and 6 specify lead) is not shown to be any more than an obvious matter of choice.

As to claim 10, we also agree that Williams is a full anticipation. The plastic bead 16 of that reference structure plainly constitutes a "*relatively*-rigid, self-supporting plastic frame moulded simultaneously around and forming a seal with" the edges of the plurality of

"panes" 12 shown therein. (Emphasis added). Paraphrasing some comments made only recently in this connection, it should have been readily apparent that this reading of claim 10 on the structure shown in Williams was simply one way of indicating to appellant that, in defining the subject matter he sought to have patented, he had chosen language so broad as to read on the prior art. In re Shearman, 435 F.2d 589, 58 CCPA 834 (1971).

The board's decision is affirmed.

Affirmed.